Alejandro S. Angulo (State Bar No. 217823)
aangulo@rutan.com
Bradley A. Chapin (State Bar No. 232885)
bchapin@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Defendant
SPORTS WAREHOUSE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT MCDUFFEE, on behalf of himself and others similarly situated,,<br><br>Plaintiff,<br><br>vs.<br><br>SPORTS WAREHOUSE, a California corporation, and DOES 1 to 10, inclusive,<br><br>Defendant. | Case No. '17CV512 JM MDD<br><br>**NOTICE OF REMOVAL OF ACTION**<br><br>(San Diego Superior Court Case No. 37-2017-00001781-CU-BT-NC) |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that defendant Sports Warehouse ("Sports Warehouse") hereby gives NOTICE OF REMOVAL of the above-captioned action from the Superior Court of San Diego County, California, to this Court under 28 U.S.C. section 1441(a) on the grounds of diversity jurisdiction under the Class Action Fairness Act ("CAFA") at 28 U.S.C. section 1332(d). In support of this Notice of Removal, Sports Warehouse alleges as follows:

/ / /

/ / /

**The Removed Case**

1. The removed case is a putative class action lawsuit filed on or about January 17, 2017 by Plaintiff Matt McDuffee ("Plaintiff"), in the Superior Court of the State of California, San Diego County, having been assigned Case Number 37-2017-00001781-CU-BT-NC and styled Matt McDuffee v. Sports Warehouse ("McDuffee").

**Papers From Removed Action**

2. As required by 28 U.S.C. section 1446(a), a copy of the Complaint, along with a Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, Notice of Eligibility To eFile, Notice of Hearing, and ADR information packet are collectively attached hereto as Exhibit A. A copy of the Summons executed by the Clerk of the Superior Court of California, San Diego County is attached hereto as Exhibit B. These papers are the only process, pleadings or orders served on Sports Warehouse in the San Diego Superior Court action as of the date of this Notice of Removal.

3. Promptly after filing this Notice of Removal with the federal District Court for the Southern District of California, Sports Warehouse will file a copy of this Notice of Removal with the Clerk of the Superior Court of San Diego County, California, and will serve notice on Plaintiff, as required by 28 U.S.C. section 1446(d).

**The Removal Is Timely**

4. On February 13, 2017, Plaintiff caused the Complaint to be delivered personally to an administrative worker at Sports Warehouse's retail location in San Luis Obispo, California. Because Plaintiff did not provide the Complaint to an "officer" or "general manager" of Sports Warehouse, this attempt did not effectuate service under California law. Cal. Code of Civ. Proc. § 416.10(b); Lee v. City of Beaumont, 12 F.3d 933, 936-37 (9th Cir. 1993) ("The issue of the sufficiency of service of process prior to removal is strictly a state law issue."). On February 17,

2017, Plaintiff also caused the Complaint to be sent by first class mail to Sports Warehouse's business address. Substitute mail service on a corporate defendant is deemed effective ten days after the mailing. Cal. Civ. Proc. Code § 415.20. Accordingly, Plaintiff effectively served Sports Warehouse on February 27, 2017, ten days after Plaintiff mailed the Complaint.

5. This Notice of Removal is filed within thirty days of February 27, 2017, i.e., the date when Sports Warehouse was first effectively served, as required by 28 U.S.C. section 1446(b), assuming that the Complaint discloses sufficient facts to support removal.[1] Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (a party must first be subject to a court's authority, i.e., be properly served with summons, before receipt of a complaint can trigger the removal statute's thirty-day filing period); Madren v. Belden, Inc., 2012 U.S. Dist. LEXIS 91635, *5 (N.D. Cal. July 2, 2012) (same).

## The Consent Requirement Is Inapplicable

6. Sports Warehouse is the sole defendant, and this case could in any event be removed without the consent of any other defendant as provided by 28 U.S.C. section 1453(b).

## Venue

7. Venue is proper under 28 U.S.C. section 1441(a) because this Court is the United States District Court for the district and division embracing the place where the state-court case was filed.

## The Grounds for Removal

8. The Federal District Court, Southern District of California, has jurisdiction over this action pursuant to CAFA, 28 U.S.C. section 1332(d) because:

///

[1] Should the Court conclude that the amount in controversy or any other fact relevant to establishing federal jurisdiction is not sufficiently certain at this time, Sports Warehouse requests leave to seek removal again after Plaintiff provides appropriate clarification.

a. McDuffee is a "class action" as defined in 28 U.S.C. section 1332(d)(1)(B) and the proposed plaintiff class has an aggregate number of members of more than 100 as required by 28 U.S.C. section 1332(d)(5)(B). Plaintiff purports to assert claims on behalf all persons who purchased merchandise from Sports Warehouse in four years prior to the Complaint's filing that was advertised with the word "Was" proximate to the "Sale" price of an item, and who were residents of California at the time of purchase. (Complaint ¶ 45.) Plaintiff alleges that the class consists of more than one hundred members. (Id. ¶ 48.)

b. There is minimal diversity. Specifically, at least one member of the proposed class of plaintiffs is a citizen of a different state than Sports Warehouse. 28 U.S.C. § 1332(d)(2)(A)-(B).

c. The amount in controversy based on the aggregation of the proposed class members' alleged claims exceeds $5,000,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2) and (6).

**Minimal Diversity Exists for CAFA Purposes**

9. CAFA's requirement of "minimal diversity" is set forth in 28 U.S.C. section 1332(d)(2)(A)-(B). This requirement is satisfied if (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; or (2) any member of a class of plaintiffs is a citizen or subject of a foreign state and any defendant is a citizen of a different state. 28 U.S.C. § 1332(d)(2)(A), (B).

10. For purposes of CAFA jurisdiction, a corporation is a citizen of both the state of its incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1). To establish citizenship for diversity purposes, a natural person must be both a citizen of the U.S. and a domiciliary of one particular state. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intention to remain. Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).

/ / /

11. Both at the time McDuffee was filed and at the time of removal, Sports Warehouse was/is a corporation incorporated pursuant to the laws of the State of California with its principal place of business located in California.

12. Plaintiff McDuffee alleges that he is, and was at all relevant times, a legal resident of Oceanside, California. (Complaint ¶ 13.)

13. Plaintiff sues on behalf of a class defined as: "All persons who (1) purchased merchandise from Defendant that was advertised in relation to a purported former price introduced with the word 'Was' proximate to the 'Sale' price of the item, and (2) who was a California resident at the time of the purchase, and (3) made his or her purchase from four years prior to the filing of this lawsuit to the present." (Complaint ¶ 45.)

14. This class undoubtedly will encompass a number of categories of putative class members who resided in California (and purchased Sports Warehouse product) within the last four years, but were not California citizens at the time of the Complaint's filing and are not California citizens as of this removal.

15. For example, some out-of-state students likely purchased Sports Warehouse products during a time in the last four years that they had a California address, but remained citizens of their home states, to which they have now returned. In addition, the proposed class contains individuals who were California citizens during some portion of the four-year long class period, but have since moved to another state and are not now California citizens. There are likely other categories of non-Californians who fall within Plaintiff's proposed class, which is not defined in terms of citizenship.

16. As a result, Sports Warehouse alleges that at least one member of the proposed plaintiff class is a citizen of a state different from Sports Warehouse (i.e., a citizen of a state other than California). This satisfies CAFA's minimal diversity requirement. 28 U.S.C. § 1332(d)(2)(A), (B).

/ / /

## The Amount in Controversy.

17. Plaintiff does not specifically allege the total amount of damages that he seeks for himself or on behalf of the class. Sports Warehouse has no obligation to venture beyond the pleadings to try to calculate the amount in controversy. Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1140 (9th Cir. Feb. 25, 2013). Nevertheless, to avoid any challenge to the timeliness of removal, Sports Warehouse has calculated the amount in controversy based on Plaintiff's allegations as exceeding $5 million, exclusive of interest and costs, as follows:

a. Plaintiff alleges that he and other class members purchased a Sports Warehouse product as a result of deceptive advertising, and that "Plaintiff would not have made [his] purchases from Defendant in the absence of Defendant's misrepresentations." (Complaint ¶ 62.) Plaintiff seeks "an award of damages according to proof," "an award of appropriate equitable relief, including but not limited to restitution of moneys paid to Defendant," "reasonable attorneys' fees and the costs of suit herein," "pre- and post-judgment interest," and "other and further relief as may be deemed necessary or appropriate." (Id., Prayer for Relief.) Plaintiff also advises that he intends to file an amended complaint seeking "punitive damages." (Id. ¶ 84.)

b. Through his Complaint, Plaintiff alleges that he purchased a Babolat Pure Control 95 tennis racquet for $129.00. (Id. ¶ 36.) He further alleges that he seeks relief "including but not limited to restitution of moneys paid to Defendant." (Id., Prayer for Relief.) Accordingly, on the face of his pleading, Plaintiff seeks at least $129.00. Although it is disputed, Plaintiff further pleads that he is typical of the putative class, such that this measure may be used for pleading purposes as a typical loss per transaction. (Id. ¶ 50.)

c. Plaintiff also prays for attorneys' fees as permitted by law. The CLRA permits prevailing plaintiffs to recover attorneys' fees. Cal. Civ. Code §§ 1780(e), 1794(d). "Attorneys' fees can be taken into account in determining the

amount in controversy if a statute authorizes fees to a successful litigant." Goldberg v. CPC International Inc., 678 F.2d 1365, 1367 (9th Cir. 1982); see also, 28 U.S.C. 1332 ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."). The Court may use 30% of the potential judgment as a guideline. In re Rite Aid Corp. Securities Litigation, 396 F.3d 294, 303 (3d Cir. 2005) (noting study done by the Federal Judicial Center that found a median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period). Accounting for fees at that rate, each plaintiff's potential recovery based on the Complaint's allegations would be approximately $167.70, which is the sum of $129.00 (representing the price of the racquet) plus $38.70 (representing potential attorneys' fees and which is 30% of $129.00, or the purchase price of the racquet).

d. If each class member's claim is worth $167.70, per the facts and theories alleged in the Complaint, then 29,816 transactions among the putative class members are needed to exceed $5 million. Kuxhausen, 707 F.3d at 1140 (multiplying the number of class members by the amount sought on behalf of each class member to arrive at the amount in controversy). While Sports Warehouse contends that it is impossible for it to determine which transactions (if any) fall within the scope of the class definition (i.e., sales advertised using "Was" proximate to the "Sale" price of the item), the Complaint alleges that Sports Warehouse has a "policy and practice" of relying on such advertisements, (id. ¶ 26), and that they apply to the "vast majority, if not all, of the items so advertised on Defendant's websites." (Id. at ¶ 44.) Based on these allegations, it is reasonable to assume that Plaintiff's claims implicate at least 29,816 transactions involving putative class members. In fact, in the four years prior to the filing of the Plaintiff's complaint, and taking Plaintiff's advertising-related allegations to be true, Sports Warehouse believes based on its estimated overall sales volume that it has likely consummated

well more than 29,816 transactions with members of the putative class as alleged by Plaintiff.

e. Although Sports Warehouse disputes liability and disputes that Plaintiff or members of the proposed plaintiff class are entitled to any monetary relief, the amount in controversy based on Plaintiff's allegations exceeds $5 million, exclusive of interest and costs, for purposes of CAFA jurisdiction. "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014).

**WHEREFORE**, Sports Warehouse hereby removes this action now pending in the Superior Court of San Diego County, California, to this Court and request that further proceedings be conducted in this Court as provided by law.

Dated: March 15, 2017

RUTAN & TUCKER, LLP
ALEJANDRO S. ANGULO
BRADLEY A. CHAPIN

By: */s/ Bradley A. Chapin*
Bradley A. Chaplin
Attorneys for Defendant
SPORTS WAREHOUSE

# EXHIBIT A

ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
anthony@counselonegroup.com
JUSTIN KACHADOORIAN, Cal. Bar No. 260356
justin@counselonegroup.com
COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210
Telephone: (310) 277-9945
Facsimile: (424) 277-3727

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
01/17/2017 at 01:37:24 PM
Clerk of the Superior Court
By Veronica Navarro,Deputy Clerk

Attorneys for Plaintiff MATT MCDUFFEE, on behalf of himself and others similarly situated

37-2017-00001781-CU-BT-NC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

MATT MCDUFFEE, on behalf of himself and others similarly situated,

Plaintiff,

v.

SPORTS WAREHOUSE, a California corporation, and DOES 1 to 10, inclusive,

Defendant.

Case No.

**CLASS ACTION COMPLAINT FOR:**

(1) Violation of California Business & Professions Code section 17200 *et seq.* (Unfair Competition Law)

(2) Violation of California Business & Professions Code section 17500 *et seq.* (False Advertising Law)

(3) Violation of California's Consumers Legal Remedies Act, California Civil Code section 1750, *et seq.*

(4) Breach of Contract

(5) Breach of Warranty

(6) Unjust Enrichment

**DEMAND FOR JURY TRIAL**

Plaintiff Matt McDuffee (hereinafter, "Plaintiff"), on behalf of himself and all others similarly situated, complains of Defendant Sports Warehouse, a California corporation ("Defendant"), as follows:

## NATURE OF ACTION

1. This class action arises from Defendant's false advertising of price discounts of its athletic products and apparel on its websites. Defendant advertises false former prices and false discounts with respect to the products it sells via its websites, including but not limited to

- http://www.tennis-warehouse.com/
- http://www.racquetballwarehouse.com/
- http://www.totalpickleball.com/
- http://www.ridingwarehouse.com/
- http://www.derbywarehouse.com/
- http://www.icewarehouse.com/
- http://www.inlinewarehouse.com/

2. Throughout the past four years Defendant has misrepresented price discounts of its online merchandise. Defendant has expressed "sale" prices as offering discounts in specific dollar amounts from purported former retail prices, as well as specific percentage amounts from purported former retail prices.

3. The supposed discounts do not exist because the merchandise never was offered at the stated former retail prices or was not offered at the stated former retail price for a substantial period of time within California. The purported former prices are not the prevailing market prices within the three months preceding the publication and dissemination of the advertised former prices, as required by California Law.

4. The Federal Trade Commission prohibits this type of false former price advertising: "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is

genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction ... [t]he 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R. § 233.1(a).

5. California's False Advertising Law prohibits misrepresentations regarding former prices. "For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published. No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Bus. & Prof. Code § 17501.

6. Defendant knows or should reasonably know that advertising its merchandise prices as discounts from purported former retail prices at which they were never sold is deceptive and misleading. Defendant concealed from Plaintiff and the putative class the fact that the merchandise was not ever actually sold at the price from which it purportedly marked down or was not sold at the stated former retail price for a substantial period of time within California. Defendant had a duty to disclose the actual prices at which the merchandise sold for rather than false, inflated prices.

7. The facts regarding the purported former retail prices that Defendant misrepresented or failed to disclose are material facts that a reasonable person would have considered material in making their decision to purchase the advertised merchandise. Plaintiff relied on Defendant's representations that he was receiving discounts from the former retail prices and representations that he was receiving a bargain against what he ordinarily would have paid.

8. Plaintiff and others similarly situated reasonably and justifiably relied to their detriment on Defendant's lack of disclosure and concealment of the actual prices at which the merchandise previously had sold for on Defendant's websites and at competitor retailers.

///

9. Defendant intentionally concealed and failed to disclose the truth about its misrepresentations and false former price advertising scheme for the purpose of inducing Plaintiff and others similarly situated to purchase merchandise from its websites.

10. Through its false and deceptive marketing, advertising and pricing scheme, Defendant has violated California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Defendant violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq*., California's Business & Professions Code §§ 17500, *et seq*., and California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.

11. Plaintiff, individually and on behalf of all others similarly situated, seeks damages, restitution, and injunctive relief to remedy the harm suffered as a result of Defendant's false advertising practices.

## PARTIES

12. Defendant is a California corporation with its principal place of business in San Luis Obispo, California and at all relevant times was engaged in commercial transactions throughout the State of California and throughout the United States of America.

13. At all times mentioned herein Plaintiff was and is a resident of Oceanside, California.

14. Plaintiff is unaware of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues those defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and on that ground alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged and that Plaintiff's injuries and damages, as alleged, are proximately caused by those occurrences.

15. Plaintiff is informed and believes and on that ground alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the

other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and on that ground alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known about and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

16. Venue as to Defendant is proper in this judicial district pursuant to Code of Civil Procedure § 395.5 because the obligations giving rise to liability occurred in part in the County of San Diego, State of California.

## FACTUAL BACKGROUND

### *Reference Prices Are Material to Consumers*

17. Defendant compares the prices of its products with higher reference prices, which consumers are led to believe are the prices supposedly charged by Defendant for the same products. Defendant labels those higher comparative prices as the "Was" prices for those products or as the manufacturer's suggested retail price (MSRP). This type of comparison pricing, where the retailer contrasts its selling price for a product with a generally much higher reference price, has become increasingly common in the retail marketplace.

18. Retailers, like Defendant, present these reference prices (commonly referred to as "advertised reference prices" or "ARPs") to consumers with short tag-line phrases such as "former price," "was," "regular price," "list price," "MSRP," or "compare at." These marketing phrases are commonly referred to as "semantic cues."

19. Over 30 years of marketing research unanimously concludes that semantic cues presented with comparative reference prices are material to consumers. That is, they influence consumers' purchasing decisions.

20. For example, a well-respected and frequently cited study by Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992), concludes that "[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product." In other words, comparative reference prices lead consumers to believe they are saving money and

increase their willingness to buy products.

21. Numerous other consumer and marketing research studies arrive at similar conclusions. For example, Compeau & Grewal, in *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002), conclude that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." They also conclude that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

22. Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011), conclude that "[r]eference price ads strongly influence consumer perceptions of value… Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."

23. Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003), similarly conclude that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."

24. The results of a study by Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990), conclude that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." This study further concludes that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."

25. The indisputable conclusion of decades of scholarly research concerning comparative reference prices, such as the "Was" reference prices used by Defendant, is that they matter—they are material to consumers.

***Defendant Uses Inflated "Was" Prices as Reference Prices.***

26. Defendant has a policy and practice of advertising merchandise for sale by representing the former price with the word "Was" immediately adjacent to the "Sale" price even though Defendant did not sell the product at the "Was" price within the three months preceding the publication and dissemination of the advertised former prices in the locality wherein the advertisements are published.

27. Through these advertisements Defendant conveys, and intends to convey, to consumers that they are saving the difference between the "Was" price and the "Sale" price. Indeed Defendant often makes this conclusion explicit by including the words "You Save: X" in bold letters underneath the word "Sale." For example, Defendant advertises CCM QuickLite QLT 230 shin guards sold on Defendant's website www.icewarehouse.com. The product is advertised as follows:

Was: $69.99
SALE: $34.97
**You Save: $35.02**

28. The "Was" prices, however, do not reflect the prevailing retail prices at which Defendant actually sell the products to customers but are rather inflated prices created or used by Defendant that falsely represent the size of the discount customers stand to receive by purchasing Defendant's merchandise.

29. The prevailing retail prices for products customers purchased are materially lower than the "Was" prices advertised by Defendant; indeed the prevailing retail prices are often or always the "Sale" price at which the products are advertised. For example, Defendant did not sell the shin guards identified for $69.99 for a reasonably substantial period of time in California prior to the product's being offered for sale at the discounted price of $34.97.

30. Moreover, Defendant advertises some of its products by comparing the "Sale" price with the manufacturer's suggested retail price (MSRP) instead of the "Was" price. The use of MSRP in Defendant's comparative pricing of certain products further leads reasonable consumers to conclude that the "Was" price represents Defendant's former price for the product.

31. The use of such language signals to consumers like Plaintiff that Defendant previously charged the "Was" amount for the product. The Federal Trade Commission (FTC) is in



EXHIBIT A, PAGE 16

accord. In its Guide against Deceptive Pricing, 16 C.F.R. § 233, the FTC advises that former price comparisons indicate that the retailer formerly offered the good at the listed price and gives as an example "Were $10, Now Only $7.50!" 16 C.F.R. § 233.1(b)-(c). *See also* 4 C.C.R. § 1301 (stating that "was" indicates a former price for the product).

32. Defendant's practice violates 16 C.F.R. § 233.1, which specifically prohibits the advertising of false, "phantom" price reductions and discounts off inflated, fictitious "regular" prices that never actually existed. *See* 16 C.F.R. § 233.1., stating:

> § 233.1 Former price comparisons.
>
> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. **The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price** (for example, by use of such language as, "Formerly sold at $___"), **unless substantial sales at that price were actually made.**
>
> * * *
>
> (d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

> (e) **If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one.** If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered." (Emphasis added.)

33. Upon information and belief, the purported "original" prices of the items on Defendants' websites are "not bona fide but fictitious" under 16 C.F.R. § 233.1 because the items were never sold or offered for sale at those prices.

34. Consequently, the purported "reduced" prices are "in reality, ... [Defendant's] regular price[s]" and "the 'bargain[s]' being advertised" by Defendant are "false." 16 C.F.R. § 233.1.

***Defendant's "Was" Reference Pricing Deceived Plaintiff and Other Customers.***

35. What happened to Plaintiff helps illustrate Defendant's unlawful practices described herein.

36. On October 11, 2016, Plaintiff purchased merchandise from http://www.tennis-warehouse.com/. Specifically, Plaintiff purchased a Babolat Pure Control 95 tennis racquet. The racquet was listed as "Sale: $129.00 Was: $179.00." The word "Sale" and the $129.00 price were highlighted in bright red text; there also was a bright red flag at the upper right of the advertisement for the racquet proclaiming "Sale" in white text.

37. Plaintiff understood this advertisement to mean that Defendant had sold the racquet at the "Was" price in California for a reasonably substantial period of time prior to the date of purchase and that he was saving $50 on Defendant's former price for the racquet. In reliance on the purported discount of $50 from Defendant's purported former price, Plaintiff purchased the racquet.

38. Upon information and belief, the purported discount was false because Defendant had not sold the racquet or even offered it for sale for $179 for a reasonably substantial period of time in California prior to the date of purchase. For at least a year if not longer Defendant did not sell or offer the racquet for sale for $179.

39. Indeed, upon information and belief, $179 did not reflect even the prevailing price for the Babolat Pure Control 95 tennis racquet because it was not the price at which other retailers sold the same product for a reasonably substantial period of time prior to the date of purchase. Upon information and belief, Defendant's competitors, Tennis Express and Midwest Sports, sold and continue to sell the same racquet at the exact same price as Defendant. In other words, the prevailing prices for the racquet that Plaintiff purchased and other products that Defendant advertised as being on sale are substantially less than the advertised "Was" price.

40. Moreover, the product purchased by Plaintiff, like other products offered by Defendant at the "Was" price, was perpetually on "sale"; that is, the "sales" prices for these items never end but rather continue on a daily basis and are available anytime a customer visits Defendant's websites. Indeed the racquet Plaintiff purchased never ceased being on "sale" for $129 since Plaintiff made his purchase.

41. In sum, the racquet that Plaintiff purchased was not actually on sale or discounted at all when Plaintiff purchased it, as represented by Defendant, and it certainly was not discounted to the extent claimed by Defendant; moreover, the price that Plaintiff paid for the racquet was not the sale or discounted price at all, as represented by Defendant, but rather the everyday, regular price for the item.

42. Defendant's misrepresentation about the purported discount price of the racquet, along with other items advertised with false "Was" reference prices, was calculated and intended to, and did in fact, induce Plaintiff's purchase thereof.

43. Defendant's advertising misled Plaintiff to believe that he was receiving substantial savings on the purchase of the racquet compared with Defendant's former price for the same product, but this was not the case.

44. These unlawful practices go well beyond the racquet purchased by Plaintiff and are applied by Defendant to the vast majority, if not all, of the items so advertised on Defendant's websites.

///

///

## CLASS ALLEGATIONS

45. Plaintiff brings this action as a class action pursuant to California Code of Civil Procedure § 382 on behalf of the following class:

> All persons who (1) purchased merchandise from Defendant that was advertised in relation to a purported former price introduced with the word "Was" proximate to the "Sale" price of the item, and (2) who was a California resident at the time of the purchase, and (3) made his or her purchase from four years prior to the filing of this lawsuit to the present.

46. Members of the class, as described above, will be referred to as "class members." Excluded from the class are: (1) Defendant, any entity or division in which either Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors, (2) the judge to whom this case is assigned and the judge's staff and members of their immediate families, and (3) Plaintiff's counsel, its staff, and members of their immediate families. Plaintiff reserves the right to amend the above class and to add subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

47. This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the class is easily ascertainable.

**A. Numerosity**

48. Although the precise number of class members has not been determined at this time, Plaintiff estimates that the class consists of more than one hundred members and that the identity of such persons is readily ascertainable by inspection of Defendant's sales records. Therefore it is reasonable that the class members are so numerous that joinder is impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**B. Common Questions Predominate**

49. There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members. Thus proof of a common set of facts will establish the right of each class member to recovery. These common questions of law and fact include but are not limited to:

a. Whether Defendant violated the FAL by falsely representing price reductions from prices at which merchandise never sold or did not sell in the recent past, thereby providing no discount or bargain to the consumer from a former price;

b. Whether Defendant violated the UCL's fraudulent prong because consumers are misled into believing that they are receiving a discount from a higher retail price they would normally pay if the item were not on sale, when in fact the consumer is simply paying the purported former price because the item was not previously sold for the higher amount or was not previously sold for the advertised amount in the recent past within California;

c. Whether Defendant violated the UCL's unfair prong because consumers are not receiving the price bargain that they are promised in the advertising in that the consumer is not paying a "sale" price but instead is paying the regular price because the item was not previously sold at a higher price or was not previously sold for the advertised amount in the recent past within California;

d. Whether Defendant violated the UCL's unlawful prong because its advertising practices constitute false advertising under the FAL and constitute violations of sections 1770(a)(5), (a)(9), (a)(13), and (a)(16) of the CLRA;

e. Whether Defendant violated section 1770(a)(5) of the CLRA by representing that the items on Defendant's websites have characteristics that they do not have (i.e., that the items are being offered for sale at a discounted price when they are not);

f. Whether Defendant violated section 1770(a)(9) of the CLRA by advertising goods with the intent not to sell them as advertised when Defendant offered a discount or sales price on its merchandise when the price was not in fact a discount or sales price;

g. Whether Defendant violated section 1770(a)(13) of the CLRA by advertising prices as discounts from former prices at which the merchandise was never sold or was not previously sold for the advertised amount in the recent past within California;

h. Whether Defendant violated section 1770(a)(16) of the CLRA by representing that the items on Defendant's websites have been supplied in accordance with previous representations (i.e., they were sold for the reference prices) when they were not;

i. Whether Defendant breached its contracts with Plaintiff and putative class members by failing to provide the represented discount;

j. Whether Defendant's advertised discounts on merchandise constituted warranties that Defendant breached by failing to sell the merchandise at a discounted price; and

k. Whether Defendant's conduct in falsely advertising merchandise as discounted from prices at which the merchandise never sold, thereby providing no discount or bargain to the consumer from a former price, constitutes unjust enrichment.

**C. Typicality**

50. Plaintiff's claims are typical of the claims of the putative class members because Plaintiff purchased an item from Defendant's website advertised to be on sale with reference to a former price that was not, however, a price at which the product had been sold in the locality within the three months preceding his purchase. In this way, Plaintiff and each class member sustained similar injuries arising out of Defendant's conduct in violation of law. The injuries of each class member were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all putative class members and represents a common thread of misconduct resulting in injury to all class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

**D. Adequacy**

51. Plaintiff will fairly and adequately represent and protect the interests of the class. Counsel who represent Plaintiff and putative class members are experienced and competent in litigating class actions.

///

///

**E. Superiority of Class Action**

52. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members. Each putative class member has been damaged and is entitled to recovery as a result of the violations alleged herein. Moreover, because the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**

**BUS. & PROF. CODE § 17200, *et seq.* (THE "UCL")**

53. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

54. California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

55. The UCL prohibits any unlawful, unfair or fraudulent business act or practice. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as an "unfair, deceptive, untrue or misleading" advertising. Cal Bus. & Prof Code § 17200. A business practice need only meet one of the three criteria to be considered unfair competition.

56. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the

harm to the alleged victims.

57. Defendant violates the unfair prong of the UCL by falsely representing that consumers are receiving a price discount from a referenced former price for its merchandise when, as alleged above, Defendant actually has inflated the products' purported "former" prices, making the promised discount false, misleading, and deceptive.

58. These acts and practices are unfair because they are likely to cause consumers to falsely believe that Defendant is offering value, discounts or bargains from the prevailing market value or worth of the products sold that do not in fact exist. As a result, purchasers, including Plaintiff, have reasonably perceived that they are receiving valuable price reductions on purchases. This perception has induced reasonable purchasers, including Plaintiff, to buy such products from Defendant and to refrain from shopping for the same or similar products from Defendant's competitors, and has deprived them of the full promised discount value.

59. The gravity of the harm to members of the putative class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendant in such deceptive acts and practices. Through its unfair acts and practices, Defendant improperly obtained, and continues to obtain, money from Plaintiff and the putative class. Plaintiff requests that Defendant restore this money to Plaintiff and all class members and cease violating the UCL. Without such relief, Plaintiff and the putative class will be irreparably harmed.

60. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

61. Defendant's advertising of false former prices is "fraudulent" within the meaning of the UCL because it has deceived Plaintiff and the general public into believing that Defendant is offering value, discounts, or bargains from the prevailing market value or worth of the products sold that do not in fact exist. As a result, purchasers, including Plaintiff, have reasonably perceived that they are receiving valuable price reductions on purchases.

62. In deciding to purchase merchandise from Defendant, Plaintiff relied on Defendant's misleading and deceptive representations regarding its purported former prices. These representations played a substantial role in Plaintiff's decision to purchase a tennis racquet from

Defendant, and Plaintiff would not have made these purchases from Defendant in the absence of Defendant's misrepresentations.

63. As a result of the foregoing conduct, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and the putative class. Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

64. Through its fraudulent acts and practices, Defendant has improperly obtained money from Plaintiff and the putative class. Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and the putative class and to enjoin Defendant from continuing to violate the UCL.

65. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law. A business act or practice is "unlawful" under the UCL if it violates any other law.

66. The Federal Trade Commission (FTC) describes false former pricing schemes, such as those practiced by Defendant, as deceptive: "(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time; it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 CFR § 233.1.

67. California law also prohibits Defendant's advertising practices: "For the purpose of this article, the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published. No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above

defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

68. The CLRA prohibits a business from advertising goods as having characteristics that they do not have (Cal. Civ. Code § 1770(a)(5)), from "[a]dvertising goods or services with intent not to sell them as advertised," (Cal. Civil Code § 1770(a)(9)), from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions" (Cal. Civ. Code § 1770(a)(13), and from representing that items have been supplied in accordance with previous representations when they have not (Cal. Civ. Code § 1770(a)(16)).

69. Defendant's advertising of its merchandise as a discount from a regular retail price, either as a monetary amount or as a percentage, violates FTC regulations (16 C.F.R. § 233), Cal. Bus. & Prof. Code § 17501, and Cal. Civ. Code § 1770 (a)(5), (a)(9), (a)(13), and (a)(16) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

70. As a result, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained as a result of its false, deceptive, and misleading conduct.

71. Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks equitable relief, including money unlawfully obtained from Plaintiff and the putative class and an order enjoining Defendant from continuing to engage in the unfair and unlawful conduct described above.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,**

**BUS. & PROF. CODE § 17500, *et seq.* (THE "FAL")**

72. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

73. The California False Advertising Law, prohibits unfair, deceptive, untrue, or misleading advertising, including but not limited to false statements as to worth, value, and former price.

74. Defendant's advertising of purported former prices that are significantly inflated from the actual retail price for the particular merchandise is unfair, deceptive, and misleading to consumers, who think they are getting a bargain on a higher quality and more valuable item than they actually are.

75. Through its unfair, deceptive, and misleading acts and practices, Defendant has improperly obtained money from Plaintiff and the putative class. Plaintiff respectfully requests that the Court restore these funds to Plaintiff and the putative class and enjoin Defendant's continuing violations of the FAL to prevent further irreparable harm to consumers.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, CAL. CIVIL CODE SECTION 1750, *et seq.* (THE "CLRA")

76. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

77. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

78. Plaintiff and each member of the putative class are "consumers" within the meaning of Civil Code § 1761(d).

79. Defendant's sale of merchandise through its website constitutes "transactions" within the meaning of Civil Code § 1761(e). The merchandise purchased by Plaintiff and the putative class are "goods" within the meaning of Civil Code § 1761(a).

80. Defendant has engaged in unfair methods of competition and unfair and/or deceptive acts or practices against Plaintiff and the putative class in violation of the CLRA by falsely representing that consumers were receiving price discounts from higher former prices of its merchandise, when in fact the merchandise was never sold at the purported higher price or has not sold at such prices in the recent past, making the supposed discount a false bargain in violation of

Cal. Civ. Code §§ 1770(a)(5) (prohibiting advertising goods as having characteristics that they do not have), 1770(a)(9) (prohibiting "[a]dvertising goods or services with intent not to sell them as advertised"), and 1770(a)(13) (prohibiting "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions"); and 1770(a)(16)(prohibiting representing that the items have been supplied in accordance with previous representations when they have not).

81. As a result of these acts and practices, Plaintiff and the putative class were damaged in that Defendant's unlawful and misleading acts and practices affected the decisions of Plaintiff and the putative class to purchase products from Defendant's websites. In the absence of Defendant's false promises of a discount, Plaintiff and the putative class would not have purchased merchandise from Defendant.

82. Alternatively, had Defendant's "Was" price actually been the true former highest price within a reasonably substantial period of time proximate to the date of purchase, and had Defendant sold the product at a price reflecting the advertised percentage discount[1] between the "Was" price and the "Sale" price as shown on the websites, Plaintiff and the putative class would have obtained a greater benefit than the one actually received.

83. Pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and the putative class, requests that this Court award damages to remedy Defendant's misconduct, punish Defendant's wrongdoing, and to enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above.

84. Pursuant to Civil Code § 1782, on January 17, 2017, Plaintiff sent Defendant a letter, by certified mail, in which he outlined the foregoing violations of the CLRA and requested that Defendant remedy these violations as to Plaintiff and the class. If Defendant does not agree to correct, repair, replace, or otherwise rectify the violations alleged herein within thirty (30) calendar days after Defendant's receipt of Plaintiff's letter, Plaintiff will file an amended complaint pursuant

[1] The difference between the "Was" price and the "Sale" price reflects a percentage discount on the former price of the product. This is a fundamental attribute of all discounts. In order for a discount to exist, there must be an original higher price. The discounted price, then, is some fraction less than one of the original higher price. Without this, the offer of a discount would be meaningless to the consumer. The consumer, when evaluating a discount, compares the magnitude of the new price with the magnitude of the old higher price, which is the mathematical equivalent of finding the percentage discount that is reflected by the new price as compared with the old higher price.

to Civil Code § 1782(d) seeking damages, including actual, statutory, and punitive damages.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

85. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

86. Plaintiff and the class members entered into contracts with Defendant.

87. The contracts provided that Plaintiff and the class members would pay Defendant for its products.

88. The contracts further provided that Defendant would provide Plaintiff and the class members a specific discount on the price of their purchases. This specified discount was a specific and material term of the contract.

89. Plaintiff and the class members paid Defendant for the products they purchased and satisfied all other conditions of the contracts.

90. Defendant breached the contracts with Plaintiff and the class members by failing to comply with the material term of providing the promised discount, and instead charged Plaintiff and the class members the full price of the products they purchased.

91. As a direct and proximate result of Defendant's breach, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

**FIFTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

92. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

93. Plaintiff and the class members formed contracts with Defendant at the time they purchased items from Defendant's websites. The terms of such contracts included the promises and affirmations of fact made by Defendant through its marketing campaign, as alleged herein, including, but not limited to, representing that the items for sale on Defendant's websites were being discounted.

///

94. These advertisements constitute express warranties, became part of the basis of the bargain, and are part of the contracts between Defendant and Plaintiff and the class members.

95. The affirmations of fact made by Defendant were made to induce Plaintiff and the class members to purchase items from Defendant's websites.

96. Defendant intended that Plaintiff and the class members should rely on those representations in making their purchases, and Plaintiff and the class members did so.

97. Defendant has breached its express warranties because, as alleged above, the products purchased by Plaintiff and members of the putative class were not discounted by the advertised amounts because the reference prices were inflated.

98. As a direct and proximate result of Defendant's breach, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## SIXTH CAUSE OF ACTION

## UNJUST ENRICHMENT

99. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

100. An individual is required to make restitution if he or she is unjustly enriched at the expense of another.

101. A person is enriched if the person receives a benefit at another's expense.

102. The person receiving the benefit is required to make restitution where the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.

103. Defendant has been unjustly enriched at the expense of Plaintiff and the putative class by receiving money from purchases of merchandise that Plaintiff and the class made from Defendant that they otherwise would not have made but for Defendant's false promises of discounts.

104. Defendant received a benefit, the profits on the prices paid for merchandise, at the expense of Plaintiff and the class because Defendant sold products that it falsely promised were discounted from higher former prices, when in fact there was no higher price from which the products were discounted, and thus consumers unwittingly paid the full, former, regular, or original price and did not receive the promised bargain.

105. It is unjust for Defendant to retain the money it received from Plaintiff and the class because Defendant gained that money by deceiving Plaintiff and the class into believing they were receiving a discount on merchandise they bought when in fact they did not receive any discount from the full, former, regular, or original price because the products were never sold at a price higher than what the consumer paid or were not sold for such prices for a reasonably substantial period of time within the recent past.

106. Plaintiff and the putative class are therefore entitled to restitution of the funds they paid to Defendant for their purchases and which Defendant has unjustly retained or for such amounts as reflect the true value of the discount as advertised of the purchased products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the putative class, prays as follows:

A. For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representative, and that Plaintiff's counsel be appointed counsel for the class;

B. For a declaration that Defendant's practices violate the UCL, FAL, and CLRA, and constitute breach of contract, breach of express warranty, and unjust enrichment;

C. For an award of damages according to proof against Defendant;

D. For an award of appropriate equitable relief, including but not limited to restitution of moneys paid to Defendant and an injunction forbidding Defendant from engaging in further unlawful conduct in violation of the UCL, FAL, and CLRA;

E. For an order awarding reasonable attorneys' fees and the costs of suit herein, including an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and California Civil Code § 1780(e);

F. For an award of pre- and post-judgment interest; and

G. For such other and further relief as may be deemed necessary or appropriate.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

DATED: January 17, 2017 COUNSELONE, PC

By [signature]
Anthony J. Orshansky
Justin Kachadoorian

*Attorneys for Plaintiff Matt McDuffee and the Putative Class*

**DECLARATION OF PLAINTIFF MATT MCDUFFEE PURSUANT TO CAL. CIVIL CODE § 1780(d)**

I, Matt McDuffee, declare:

1. I am over 18 years of age and a named plaintiff in this action. I have personal knowledge of the facts herein, and if called upon to testify to the information contained in this Declaration, I could and would competently do so.

2. During the events giving rise to this lawsuit I resided in San Diego County, and it was in San Diego County that I made my online purchase of products from Defendant's website. Defendant shipped the products I purchased to my home in San Diego County.

3. The County of San Diego is a proper place for trial of this action because Defendant does business in this county and the transaction or substantial portion thereof giving rise to this action occurred in San Diego County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 10, 2017.

By: [signature]
Matt McDuffee

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Anthony J. Orshansky (SBN 199364)
CounselOne, PC
10530 Wilshire Blvd., Suite 650
Beverly Hills, CA 90210
TELEPHONE NO.: (310) 277-9945 FAX NO.: (424) 277-3727
ATTORNEY FOR (Name): Plaintiff Matt McDuffee

FOR COURT USE ONLY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**01/17/2017** at 01:37:24 PM
Clerk of the Superior Court
By Veronica Navarro, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 South Melrose Dr.
MAILING ADDRESS:
CITY AND ZIP CODE: Vista 92081
BRANCH NAME: North County Regional Center

CASE NAME:
McDuffee v. Sports Warehouse

# CIVIL CASE COVER SHEET

[✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 37-2017-00001781-CU-BT-NC

JUDGE: Judge Robert P Dahlquist

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [✓] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (*not specified above*) (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [✓] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (*specify*): 6
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: January 17, 2017
Anthony J. Orshansky
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br>STREET ADDRESS: 325 S Melrose DRIVE<br>MAILING ADDRESS: 325 S Melrose DRIVE<br>CITY AND ZIP CODE: Vista, CA 92081-6695<br>BRANCH NAME: North County<br>TELEPHONE NUMBER: (760) 201-8029 | |
| PLAINTIFF(S) / PETITIONER(S): Matt McDuffee | |
| DEFENDANT(S) / RESPONDENT(S): Sports Warehouse | |
| MCDUFFEE VS SPORTS WAREHOUSE [IMAGED] | |
| **NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>37-2017-00001781-CU-BT-NC |

**CASE ASSIGNMENT**

Judge: Robert P Dahlquist Department: N-29

**COMPLAINT/PETITION FILED:** 01/17/2017

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/23/2017 | 09:00 am | N-29 | Robert P Dahlquist |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

---

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

Superior Court of California
County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "**IMAGED FILE**" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 325 S Melrose Drive<br>MAILING ADDRESS: 325 S Melrose Drive<br>CITY AND ZIP CODE: Vista CA 92081-6695<br>BRANCH NAME: North County | |
| Short Title: McDuffee vs Sports Warehouse [IMAGED] | |
| NOTICE OF CONFIRMATION OF ELECTRONIC FILING | CASE NUMBER:<br>37-2017-00001781-CU-BT-NC |

San Diego Superior Court has reviewed the electronic filing described below. The fee assessed for processing and the filing status of each submitted document are also shown below.

**Electronic Filing Summary Data**

| | |
|---|---|
| Electronically Submitted By: | Anthony Orshansky |
| On Behalf of: | Matt McDuffee |
| Transaction Number: | 2309329 |
| Court Received Date: | 01/17/2017 |
| Filed Date: | 01/17/2017 |
| Filed Time: | 01:37 PM |
| Fee Amount Assessed: | $435.00 |
| Case Number: | 37-2017-00001781-CU-BT-NC |
| Case Title: | McDuffee vs Sports Warehouse [IMAGED] |
| Location: | North County |
| Case Type: | Business Tort |
| Case Category: | Civil - Unlimited |
| Jurisdictional Amount: | > 25000 |

| Status | Documents Electronically Filed/Received |
|---|---|
| Accepted | Complaint |
| Accepted | Civil Case Cover Sheet |
| Accepted | Original Summons |

**Comments**

**Clerk's Comments:**
**Events Scheduled**

| Hearing(s) | Date | Time | Location | Department |
|---|---|---|---|---|
| Civil Case Management Conference | 06/23/2017 | 09:00 AM | North County | N-29 |

**Electronic Filing Service Provider Information**

Service Provider: OneLegal
Email: support@onelegal.com

Contact Person: Customer Support
Phone: (800) 938-8815

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 325 S. Melrose<br>MAILING ADDRESS: 325 S. Melrose<br>CITY AND ZIP CODE: Vista, CA 92081<br>BRANCH NAME: North County<br>TELEPHONE NUMBER: (760) 201-8029 | |
| PLAINTIFF(S)/PETITIONER(S)/APPELLANT(S): Matt McDuffee | |
| DEFENDANT(S)/RESPONDENT(S): Sports Warehouse | |
| Short Title: McDuffee vs Sports Warehouse [IMAGED] | |
| NOTICE OF HEARING | CASE NUMBER:<br>37-2017-00001781-CU-BT-NC |

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above. All inquiries regarding this notice should be referred to the court listed above.

| TYPE OF HEARING | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/23/2017 | 09:00 am | N-29 | Robert P Dahlquist |

Counsel: Check service list. If you have brought a party into this case who is not included in the service list, San Diego Superior Court Local Rules, Division II, requires you to serve the party with a copy of this notice.

A case management statement must be completed by counsel for all parties or parties in pro per and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR options.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>North County<br>325 S. Melrose<br>Vista, CA 92081 | |
|---|---|
| SHORT TITLE: McDuffee vs Sports Warehouse [IMAGED] | |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>37-2017-00001781-CU-BT-NC |

I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF HEARING was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at Vista, California on 01/17/2017. The mailing occurred at Gardena, California on 01/18/2017.

Clerk of the Court, by: V. Navarro ______________________, Deputy

V. Navarro

ANTHONY J ORSHANSKY
9301 WILSHIRE BOULEVARD # 650
BEVERLY HILLS, CA 90210

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2017-00001781-CU-BT-NC CASE TITLE: McDuffee vs Sports Warehouse [IMAGED]

**NOTICE: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**

**(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
**(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and***
**(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable

### Most Common Types of ADR

You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

**Local ADR Programs for Civil Cases**

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):

- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice**

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 325 S. Melrose<br>MAILING ADDRESS: 325 S. Melrose<br>CITY, STATE, & ZIP CODE: Vista, CA 92081-6695<br>BRANCH NAME: North County | |
| PLAINTIFF(S): Matt McDuffee | |
| DEFENDANT(S): Sports Warehouse | |
| SHORT TITLE: MCDUFFEE VS SPORTS WAREHOUSE [IMAGED] | |
| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2017-00001781-CU-BT-NC |

Judge: Robert P Dahlquist Department: N-29

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

- ☐ Mediation (court-connected)
- ☐ Non-binding private arbitration
- ☐ Mediation (private)
- ☐ Binding private arbitration
- ☐ Voluntary settlement conference (private)
- ☐ Non-binding judicial arbitration (discovery until 15 days before trial)
- ☐ Neutral evaluation (private)
- ☐ Non-binding judicial arbitration (discovery until 30 days before trial)
- ☐ Other (*specify e.g., private mini-trial, private judge, etc.*): ______________________

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* ______________________

Alternate neutral (for court Civil Mediation Program and arbitration only): ______________________

Date: ______________________ Date: ______________________

______________________ ______________________
Name of Plaintiff Name of Defendant

______________________ ______________________
Signature Signature

______________________ ______________________
Name of Plaintiff's Attorney Name of Defendant's Attorney

______________________ ______________________
Signature Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 01/17/2017 ______________________
JUDGE OF THE SUPERIOR COURT

# EXHIBIT B

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
01/17/2017 at 01:37:24 PM
Clerk of the Superior Court
By Veronica Navarro,Deputy Clerk

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*

SPORTS WAREHOUSE, a California corporation, and DOES 1 to 10, inclusive

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MATT MCDUFFEE, on behalf of himself and others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

San Diego Superior Court - North County Regional Center
325 South Melrose Drive, Vista, CA 92081

37-2017-00001781-CU-BT-NC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Anthony J. Orshansky, Esq., 9301 Wilshire Blvd., Suite 650, Beverly Hills, CA 90210, tel. (310) 277-9945

DATE: January 17, 2017
*(Fecha)*

Clerk, by *(Secretario)* V. Navarro V. Navarro , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

Superior Court of California County of San Diego

NOTICE TO THE PERSON SERVED: You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: SPORTS WAREHOUSE, a California corporation

   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:





EXHIBIT B, PAGE 44