ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
anthony@counselonegroup.com
ALEXANDRIA R. KACHADOORIAN, Cal. Bar. No. 240601
alexandria@counselonegrop.com
JUSTIN KACHADOORIAN, Cal. Bar. No. 260356
justin@counselonegroup.com
COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210
Telephone: (310) 277-9945
Facsimile:  (424) 277-3727

Attorneys for Plaintiff MATT MCDUFFEE,
on behalf of himself and others similarly situated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT MCDUFFEE, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPORTS WAREHOUSE, a California corporation, and DOES 1 to 10, inclusive,<br><br>Defendant. | Case No. 3:17-CV-00512-JM-MDD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of California Business & Professions Code section 17200 *et seq.* (Unfair Competition Law)<br><br>(2) Violation of California Business & Professions Code section 17500 *et seq.* (False Advertising Law)<br><br>(3) Violation of California's Consumers Legal Remedies Act, California Civil Code section 1750, *et seq.*<br><br>(4) Breach of Contract<br><br>(5) Breach of Warranty<br><br>(6) Unjust Enrichment<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:17-CV-00512-JM-MDD

Plaintiff Matt McDuffee (hereinafter, "Plaintiff"), on behalf of himself and all others similarly situated, complains of Defendant Sports Warehouse, a California corporation ("Defendant"), as follows:

## NATURE OF ACTION[1]

1. This class action arises from Defendant's false advertising of price discounts of its athletic products and apparel on its websites. Defendant advertises false former prices and false discounts with respect to the products it sells via its websites, including but not limited to

- http://www.tennis-warehouse.com/
- http://www.racquetballwarehouse.com/
- http://www.totalpickleball.com/
- http://www.ridingwarehouse.com/
- http://www.derbywarehouse.com/
- http://www.icewarehouse.com/
- http://www.inlinewarehouse.com/

2. Throughout the past four years Defendant has misrepresented price discounts of its online merchandise. Defendant has expressed "sale" prices as offering discounts in specific dollar amounts from purported former retail prices, as well as specific percentage amounts from purported former retail prices.

3. The supposed discounts do not exist because the merchandise never was offered at the stated former retail prices or was not offered at the stated former retail price for a substantial period of time within California. The purported former prices are not the prevailing market prices within the three months preceding the publication and dissemination of the advertised former prices, as required by California Law.

4. The Federal Trade Commission prohibits this type of false former price advertising: "One of the most commonly used forms of bargain advertising is to offer

---

[1] Plaintiff denies that this Court has subject matter jurisdiction and has filed a motion to remand the action to state court. [ECF No. 8.] The Court has not yet ruled on that motion. Consequently Plaintiff files this Amended Complaint without prejudice to his remand motion.

a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction … [t]he 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R. § 233.l(a).

5. California's False Advertising Law prohibits misrepresentations regarding former prices.  "For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.  No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."  Bus. & Prof. Code § 17501.

6. Defendant knows or should reasonably know that advertising its merchandise prices as discounts from purported former retail prices at which they were never sold is deceptive and misleading.  Defendant concealed from Plaintiff and the putative class the fact that the merchandise was not ever actually sold at the price from which it purportedly marked down or was not sold at the stated former retail price for a substantial period of time within California proximate to the date of sale.  Defendant had a duty to disclose the actual prices at which the merchandise sold for rather than false, inflated prices.

///

7. The facts regarding the purported former retail prices that Defendant misrepresented or failed to disclose are material facts that a reasonable person would have considered material in making their decision to purchase the advertised merchandise.  Plaintiff relied on Defendant's representations that he was receiving discounts from the former retail prices and representations that he was receiving a bargain against what he ordinarily would have paid.

8. Plaintiff and others similarly situated reasonably and justifiably relied to their detriment on Defendant's lack of disclosure and concealment of the actual prices at which the merchandise previously had sold for on Defendant's websites and at competitor retailers.

9. Defendant intentionally concealed and failed to disclose the truth about its misrepresentations and false former price advertising scheme for the purpose of inducing Plaintiff and others similarly situated to purchase merchandise from its websites.

10. Through its false and deceptive marketing, advertising and pricing scheme, Defendant has violated California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.  Defendant violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq.*, California's Business & Professions Code §§ 17500, *et seq*., and California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*

11. Plaintiff, individually and on behalf of all others similarly situated, seeks damages, restitution, and injunctive relief to remedy the harm suffered as a result of Defendant's false advertising practices.

///
///
///
///

## PARTIES

12. Defendant is a California corporation with its principal place of business in San Luis Obispo, California and at all relevant times was engaged in commercial transactions throughout the State of California and throughout the United States of America.

13. At all times mentioned herein Plaintiff was and is a resident of Oceanside, California.

14. Plaintiff is unaware of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues those defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and on that ground alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged and that Plaintiff's injuries and damages, as alleged, are proximately caused by those occurrences.

15. Plaintiff is informed and believes and on that ground alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and on that ground alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known about and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

16. Plaintiff denies that this Court has subject matter jurisdiction and has filed a motion to remand the action to state court. [ECF No. 8.] Venue as to Defendant is proper in San Diego Superior Court pursuant to California Code of Civil

4

Procedure § 395.5 because the obligations giving rise to liability occurred in part in the County of San Diego, State of California.

## FACTUAL BACKGROUND

### *Reference Prices Are Material to Consumers*

17. Defendant compares the prices of its products with higher reference prices, which consumers are led to believe are the prices supposedly charged by Defendant for the same products. Defendant labels those higher comparative prices as the "Was" prices for those products or as the manufacturer's suggested retail price (MSRP). This type of comparison pricing, where the retailer contrasts its selling price for a product with a generally much higher reference price, has become increasingly common in the retail marketplace.

18. Retailers, like Defendant, present these reference prices (commonly referred to as "advertised reference prices" or "ARPs") to consumers with short tag-line phrases such as "former price," "was," "regular price," "list price," "MSRP," or "compare at." These marketing phrases are commonly referred to as "semantic cues."

19. Over 30 years of marketing research unanimously concludes that semantic cues presented with comparative reference prices are material to consumers. That is, they influence consumers' purchasing decisions.

20. For example, a well-respected and frequently cited study by Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992), concludes that "[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product." In other words, comparative reference prices lead consumers to believe they are saving money and increase their willingness to buy products.

21. Numerous other consumer and marketing research studies arrive at similar conclusions. For example, Compeau & Grewal, in *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter

5

2002), conclude that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." They also conclude that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

22. Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011), conclude that "[r]eference price ads strongly influence consumer perceptions of value… Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."

23. Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003), similarly conclude that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."

24. The results of a study by Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990), conclude that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." This study further concludes that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."

25. The indisputable conclusion of decades of scholarly research concerning comparative reference prices, such as the "Was" reference prices used by Defendant, is that they matter—they are material to consumers.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:17-CV-00512-JM-MDD

*Defendant Uses Inflated "Was" Prices as Reference Prices.*

26. Defendant has a policy and practice of advertising merchandise for sale by representing the former price with the word "Was" immediately adjacent to the "Sale" price even though Defendant did not sell the product at the "Was" price within the three months preceding the publication and dissemination of the advertised former prices in the locality wherein the advertisements are published.

27. Through these advertisements Defendant conveys, and intends to convey, to consumers that they are saving the difference between the "Was" price and the "Sale" price.  Indeed Defendant often makes this conclusion explicit by including the words "You Save: X" in bold letters underneath the word "Sale."  For example, Defendant advertises CCM QuickLite QLT 230 shin guards sold on Defendant's website www.icewarehouse.com.  The product is advertised as follows:

Was: $69.99
SALE: $34.97
**You Save: $35.02**

28. The "Was" prices, however, do not reflect the prevailing retail prices at which Defendant actually sell the products to customers but are rather inflated prices created or used by Defendant that falsely represent the size of the discount customers stand to receive by purchasing Defendant's merchandise.

29. The prevailing retail prices for products customers purchased are materially lower than the "Was" prices advertised by Defendant; indeed the prevailing retail prices are often or always the "Sale" price at which the products are advertised. For example, Defendant did not sell the shin guards identified for $69.99 for a reasonably substantial period of time in California prior to the product's being offered for sale at the discounted price of $34.97.

30. Moreover, Defendant advertises some of its products by comparing the "Sale" price with the manufacturer's suggested retail price (MSRP) instead of the "Was" price.   The use of MSRP in Defendant's comparative pricing of certain products further leads reasonable consumers to conclude that the "Was" price

represents Defendant's former price for the product.

31. The use of such language signals to consumers like Plaintiff that Defendant previously charged the "Was" amount for the product.  The Federal Trade Commission (FTC) is in accord.  In its Guide against Deceptive Pricing, 16 C.F.R. § 233, the FTC advises that former price comparisons indicate that the retailer formerly offered the good at the listed price and gives as an example "Were $10, Now Only $7.50!"  16 C.F.R. § 233.1(b)-(c).  *See also* 4 C.C.R. § 1301 (stating that "was" indicates a former price for the product).

32. Defendant's practice violates 16 C.F.R. § 233.1, which specifically prohibits the advertising of false, "phantom" price reductions and discounts off inflated, fictitious "regular" prices that never actually existed.  *See* 16 C.F.R. § 233.1., stating:

> § 233.1 Former price comparisons.
>
> (a)  One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**
>
> (b)  A former price is not necessarily fictitious merely because no sales at the advertised price were made. **The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher**

**price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price** (for example, by use of such language as, "Formerly sold at $___"), **unless substantial sales at that price were actually made.**

\* \* \*

(d)   Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

(e) **If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one.**  If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless.  It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered." (Emphasis added.)

33. Upon information and belief, the purported "original" prices of the items on Defendants' websites are "not bona fide but fictitious" under 16 C.F.R. § 233.1 because the items were never sold or offered for sale at those prices.

34. Consequently, the purported "reduced" prices are "in reality, ... [Defendant's] regular price[s]" and "the 'bargain[s]' being advertised" by Defendant are "false." 16 C.F.R. § 233.1.

///

///

9

1    ***Defendant's "Was" Reference Pricing Deceived Plaintiff and Other Customers.***

2         35. What happened to Plaintiff helps illustrate Defendant's unlawful

3    practices described herein.

4         36. On October 11, 2016, Plaintiff purchased merchandise from

5    http://www.tennis-warehouse.com/.  Specifically, Plaintiff purchased a Babolat Pure

6    Control 95 tennis racquet.  The racquet was listed as "Sale: $129.00 Was: $179.00."

7    The word "Sale" and the $129.00 price were highlighted in bright red text; there also

8    was a bright red flag at the upper right of the advertisement for the racquet

9    proclaiming "Sale" in white text.

10        37. Plaintiff understood this advertisement to mean that Defendant had sold

11   the racquet at the "Was" price in California for a reasonably substantial period of time

12   prior to the date of purchase and that he was saving $50 on Defendant's former price

13   for the racquet.   In reliance on the purported discount of $50 from Defendant's

14   purported former price, Plaintiff purchased the racquet.

15        38. Based upon an investigation of Defendant's website and archived pages

16   from Defendant's website proximate and prior to the date of Plaintiff's purchase and

17   continuing through to the filing of the original complaint, Plaintiff alleges that the

18   purported discount was false because Defendant had not sold the racquet or even

19   offered it for sale for $179 for a reasonably substantial period of time in California

20   prior to the date of purchase.  Plaintiff's pre-filing investigation shows that for at least

21   a year if not longer Defendant did not sell or offer the racquet for sale for $179.

22        39. Indeed, $179 did not reflect even the prevailing price for the Babolat

23   Pure Control 95 tennis racquet at the time of Plaintiff's purchase because it was not

24   the price at which other retailers sold the same product for a reasonably substantial

25   period of time prior to the date of purchase.  Based on an investigation of the prices

26   charged for the same product on competitors' websites proximate to the date of

27   Plaintiff's purchase and the filing of the original complaint, Defendant's competitors,

28   namely, Tennis Express and Midwest Sports, sold and, at the time of filing the original

10

complaint, continued to sell the same racquet at the exact same price as Defendant. In other words, the prevailing prices for the racquet that Plaintiff purchased and other products that Defendant advertised as being on sale are substantially less than the advertised "Was" price.

40. Moreover, the product purchased by Plaintiff, like other products offered by Defendant at the "Was" price, was perpetually on "sale"; that is, the "sales" prices for these items never end but rather continue on a daily basis and are available anytime a customer visits Defendant's websites.   Indeed the racquet Plaintiff purchased never ceased being on "sale" for $129 since Plaintiff made his purchase.

41. In sum, the racquet that Plaintiff purchased was not actually on sale or discounted at all when Plaintiff purchased it, as represented by Defendant, and it certainly was not discounted to the extent claimed by Defendant; moreover, the price that Plaintiff paid for the racquet was not the sale or discounted price at all, as represented by Defendant, but rather the everyday, regular price for the item.

42. Defendant's misrepresentation about the purported discount price of the racquet, along with other items advertised with false "Was" reference prices, was calculated and intended to, and did in fact, induce Plaintiff's purchase thereof.

43. Defendant's advertising misled Plaintiff to believe that he was receiving substantial savings on the purchase of the racquet compared with Defendant's former price for the same product, but this was not the case.

44. These unlawful practices go well beyond the racquet purchased by Plaintiff and are applied by Defendant to many of the items so advertised on Defendant's websites.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action as a class action pursuant to California Code of Civil Procedure § 382[2] on behalf of the following class:

---

[2]  Plaintiff denies federal subject matter jurisdiction; however, if this action should remain in federal court, Plaintiff will seek to certify a class under Federal Rule of Civil Procedure 23(b)(2) and (3).

1
2
3
4
5

All citizens of the State of California who (1) purchased merchandise from Defendant that was advertised in relation to a purported former price introduced with the word "Was" proximate to the "Sale" price of the item, and (2) who was a citizen of the State of California at the time of the purchase, and (3) made his or her purchase from four years prior to the filing of the original complaint to the present.

6
7
8
9
10
11
12
13

46. Members of the class, as described above, will be referred to as "class members."  Excluded from the class are:  (1) Defendant, any entity or division in which either Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors, (2) the judge to whom this case is assigned and the judge's staff and members of their immediate families, and (3) Plaintiff's counsel, its staff, and members of their immediate families.   Plaintiff reserves the right to amend the above class and to add subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

14
15
16
17

47. This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure § 382 (or, alternatively, Federal Rule of Civil Procedure 23) because there is a well-defined community of interest in the litigation and the class is easily ascertainable.

18

**A.    Numerosity**

19
20
21
22
23
24

48.  Although the precise number of class members has not been determined at this time, Plaintiff estimates that the class consists of more than one hundred members and that the identity of such persons is readily ascertainable by inspection of Defendant's sales records.  Therefore it is reasonable that the class members are so numerous that joinder is impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

25

**B.    Common Questions Predominate**

26
27
28

49. There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members. Thus proof of a common set of facts will establish the right of each class member to

recovery.  These common questions of law and fact include but are not limited to:

    a.   Whether Defendant violated the FAL by falsely representing price reductions from prices at which merchandise never sold or did not sell in the recent past, thereby providing no discount or bargain to the consumer from a former price;

    b.   Whether Defendant violated the UCL's fraudulent prong because consumers are misled into believing that they are receiving a discount from a higher retail price they would normally pay if the item were not on sale, when in fact the consumer is simply paying the purported former price because the item was not previously sold for the higher amount or was not previously sold for the advertised amount in the recent past within California;

    c.   Whether Defendant violated the UCL's unfair prong because consumers are not receiving the price bargain that they are promised in the advertising in that the consumer is not paying a "sale" price but instead is paying the regular price because the item was not previously sold at a higher price or was not previously sold for the advertised amount in the recent past within California;

    d.   Whether Defendant violated the UCL's unlawful prong because its advertising practices constitute false advertising under the FAL and constitute violations of sections 1770(a)(5), (a)(9), (a)(13), and (a)(16) of the CLRA;

    e.   Whether Defendant violated section 1770(a)(5) of the CLRA by representing that the items on Defendant's websites have characteristics that they do not have (i.e., that the items are being offered for sale at a discounted price when they are not);

    f.   Whether Defendant violated section 1770(a)(9) of the CLRA by advertising goods with the intent not to sell them as advertised when

13

Defendant offered a discount or sales price on its merchandise when the price was not in fact a discount or sales price;

g.    Whether Defendant violated section 1770(a)(13) of the CLRA by advertising prices as discounts from former prices at which the merchandise was never sold or was not previously sold for the advertised amount in the recent past within California;

h.    Whether Defendant violated section 1770(a)(16) of the CLRA by representing that the items on Defendant's websites have been supplied in accordance with previous representations (i.e., they were sold for the reference prices) when they were not;

i.    Whether Defendant breached its contracts with Plaintiff and putative class members by failing to provide the represented discount;

j.    Whether Defendant's advertised discounts on merchandise constituted warranties that Defendant breached by failing to sell the merchandise at a discounted price; and

k.    Whether Defendant's conduct in falsely advertising merchandise as discounted from prices at which the merchandise never sold, thereby providing no discount or bargain to the consumer from a former price, constitutes unjust enrichment.

**C.    Typicality**

50. Plaintiff's claims are typical of the claims of the putative class members because Plaintiff purchased an item from Defendant's website advertised to be on sale with reference to a former price that was not, however, a price at which the product had been sold in the locality within the three months preceding his purchase.  In this way, Plaintiff and each class member sustained similar injuries arising out of Defendant's conduct in violation of law.  The injuries of each class member were caused directly by Defendant's wrongful conduct.   In addition, the factual underpinning of Defendant's misconduct is common to all putative class members

14

and represents a common thread of misconduct resulting in injury to all class members.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

**D.     Adequacy**

51. Plaintiff will fairly and adequately represent and protect the interests of the class.  Counsel who represent Plaintiff and putative class members are experienced and competent in litigating class actions.

**E.     Superiority of Class Action**

52. A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members.  Each putative class member has been damaged and is entitled to recovery as a result of the violations alleged herein.  Moreover, because the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

## FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUS. & PROF. CODE § 17200, *et seq.* (THE "UCL")

53. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

54. California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 *et seq.*, protects both consumers and competitors by

15

1   promoting fair competition in commercial markets for goods and services.

2       55. The UCL prohibits any unlawful, unfair or fraudulent business act or

3   practice.  The UCL defines unfair business competition to include any "unlawful,

4   unfair or fraudulent" act or practice, as well as an "unfair, deceptive, untrue or

5   misleading" advertising.  Cal Bus. & Prof Code § 17200.  A business practice need

6   only meet one of the three criteria to be considered unfair competition.

7       56. A business act or practice is "unfair" under the Unfair Competition Law

8   if the reasons, justifications and motives of the alleged wrongdoer are outweighed by

9   the gravity of the harm to the alleged victims.

10      57. Defendant violates the unfair prong of the UCL by falsely representing

11  that consumers are receiving a price discount from a referenced former price for its

12  merchandise when, as alleged above, Defendant actually has inflated the products'

13  purported "former" prices, making the promised discount false, misleading, and

14  deceptive.

15      58. These acts and practices are unfair because they are likely to cause

16  consumers to falsely believe that Defendant is offering value, discounts or bargains

17  from the prevailing market value or worth of the products sold that do not in fact exist.

18  As a result, purchasers, including Plaintiff, have reasonably perceived that they are

19  receiving valuable price reductions on purchases.  This perception has induced

20  reasonable purchasers, including Plaintiff, to buy such products from Defendant and

21  to refrain from shopping for the same or similar products from Defendant's

22  competitors, and has deprived them of the full promised discount value.

23      59. The gravity of the harm to members of the putative class resulting from

24  these unfair acts and practices outweighs any conceivable reasons, justifications

25  and/or motives of Defendant in such deceptive acts and practices.  Through its unfair

26  acts and practices, Defendant improperly obtained, and continues to obtain, money

27  from Plaintiff and the putative class.  Plaintiff requests that Defendant restore this

28  money to Plaintiff and all class members and cease violating the UCL.  Without such

16

1    relief, Plaintiff and the putative class will be irreparably harmed.

2          60. A business act or practice is "fraudulent" under the UCL if it is likely to

3    deceive members of the consuming public.

4          61. Defendant's advertising of false former prices is "fraudulent" within the

5    meaning of the UCL because it has deceived Plaintiff and the general public into

6    believing that Defendant is offering value, discounts, or bargains from the prevailing

7    market value or worth of the products sold that do not in fact exist.  As a result,

8    purchasers, including Plaintiff, have reasonably perceived that they are receiving

9    valuable price reductions on purchases.

10         62. In deciding to purchase merchandise from Defendant, Plaintiff relied on

11   Defendant's misleading and deceptive representations regarding its purported former

12   prices.  These representations played a substantial role in Plaintiff's decision to

13   purchase a tennis racquet from Defendant, and Plaintiff would not have made these

14   purchases from Defendant in the absence of Defendant's misrepresentations.

15         63. As a result of the foregoing conduct, Defendant has been, and will

16   continue to be, unjustly enriched at the expense of Plaintiff and the putative class.

17   Defendant has been unjustly enriched by obtaining revenues and profits that it would

18   not otherwise have obtained absent its false, misleading, and deceptive conduct.

19         64. Through its fraudulent acts and practices, Defendant has improperly

20   obtained money from Plaintiff and the putative class.  Plaintiff requests that this Court

21   order Defendant to restore this money to Plaintiff and the putative class and to enjoin

22   Defendant from continuing to violate the UCL.

23         65. An unlawful business practice is anything that can properly be called a

24   business practice and that at the same time is forbidden by law.  A business act or

25   practice is "unlawful" under the UCL if it violates any other law.

26         66. The Federal Trade Commission (FTC) describes false former pricing

27   schemes, such as those practiced by Defendant, as deceptive:  "(a) One of the most

28   commonly used forms of bargain advertising is to offer a reduction from the

17

advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time; it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects."  16 CFR § 233.1.

67. California law also prohibits Defendant's advertising practices: "For the purpose of this article, the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.  No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement."  Cal. Bus. & Prof. Code § 17501.

68. The CLRA prohibits a business from advertising goods as having characteristics that they do not have (Cal. Civ. Code § 1770(a)(5)), from "[a]dvertising goods or services with intent not to sell them as advertised," (Cal. Civil Code § 1770(a)(9)), from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions" (Cal. Civ. Code § 1770(a)(13), and from representing that items have been supplied in accordance with previous representations when they have not (Cal. Civ. Code § 1770(a)(16)).

69. Defendant's advertising of its merchandise as a discount from a regular retail price, either as a monetary amount or as a percentage, violates FTC regulations (16 C.F.R. § 233), Cal. Bus. & Prof. Code § 17501, and Cal. Civ. Code § 1770 (a)(5),

18

(a)(9), (a)(l3), and (a)(16) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

70. As a result, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class.  Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained as a result of its false, deceptive, and misleading conduct.

71. Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks equitable relief, including money unlawfully obtained from Plaintiff and the putative class and an order enjoining Defendant from continuing to engage in the unfair and unlawful conduct described above.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,

### BUS. & PROF. CODE § 17500, *et seq.* (THE "FAL")

72. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

73. The California False Advertising Law, prohibits unfair, deceptive, untrue, or misleading advertising, including but not limited to false statements as to worth, value, and former price.

74. Defendant's advertising of purported former prices that are significantly inflated from the actual retail price for the particular merchandise is unfair, deceptive, and misleading to consumers, who think they are getting a bargain on a higher quality and more valuable item than they actually are.

///

///

///

///

75. Through its unfair, deceptive, and misleading acts and practices, Defendant has improperly obtained money from Plaintiff and the putative class. Plaintiff respectfully requests that the Court restore these funds to Plaintiff and the putative class and enjoin Defendant's continuing violations of the FAL to prevent further irreparable harm to consumers.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, CAL. CIVIL CODE SECTION 1750, *et seq.* (THE "CLRA")

76. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

77. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

78. Plaintiff and each member of the putative class are "consumers" within the meaning of Civil Code § l76l(d).

79. Defendant's sale of merchandise through its website constitutes "transactions" within the meaning of Civil Code § 1761(e). The merchandise purchased by Plaintiff and the putative class are "goods" within the meaning of Civil Code § l76l(a).

80. Defendant has engaged in unfair methods of competition and unfair and/or deceptive acts or practices against Plaintiff and the putative class in violation of the CLRA by falsely representing that consumers were receiving price discounts from higher former prices of its merchandise, when in fact the merchandise was never sold at the purported higher price or has not sold at such prices in the recent past, making the supposed discount a false bargain in violation of Cal. Civ. Code §§ 1770(a)(5) (prohibiting advertising goods as having characteristics that they do not have), 1770(a)(9) (prohibiting "[a]dvertising goods or services with intent not to sell them as advertised"), and 1770(a)(l3) (prohibiting "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price

reductions"); and 1770(a)(16)(prohibiting representing that the items have been supplied in accordance with previous representations when they have not).

81. As a result of these acts and practices, Plaintiff and the putative class were damaged in that Defendant's unlawful and misleading acts and practices affected the decisions of Plaintiff and the putative class to purchase products from Defendant's websites. In the absence of Defendant's false promises of a discount, Plaintiff and the putative class would not have purchased merchandise from Defendant.

82. Alternatively, had Defendant's "Was" price actually been the true former highest price within a reasonably substantial period of time proximate to the date of purchase, and had Defendant sold the product at a price reflecting the advertised percentage discount[3] between the "Was" price and the "Sale" price as shown on the websites, Plaintiff and the putative class would have obtained a greater benefit than the one actually received.

83. Pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and the putative class, requests that this Court award damages to remedy Defendant's misconduct, punish Defendant's wrongdoing, and to enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above.

84. Pursuant to Civil Code § 1782, on January 17, 2017, Plaintiff sent Defendant a letter, by certified mail, in which he outlined the foregoing violations of the CLRA and requested that Defendant remedy these violations as to Plaintiff and the class. Defendant has not agreed to correct, repair, replace, or otherwise rectify the violations alleged herein within thirty (30) calendar days after Defendant's receipt of

---

[3] The difference between the "Was" price and the "Sale" price reflects a percentage discount on the former price of the product. This is a fundamental attribute of all discounts. In order for a discount to exist, there must be an original higher price. The discounted price, then, is some fraction less than one of the original higher price. Without this, the offer of a discount would be meaningless to the consumer. The consumer, when evaluating a discount, compares the magnitude of the new price with the magnitude of the old higher price, which is the mathematical equivalent of finding the percentage discount that is reflected by the new price as compared with the old higher price.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:17-CV-00512-JM-MDD

1   Plaintiff's letter.  Consequently, Plaintiff files this Amended Complaint pursuant to
2   Civil Code § 1782(d) to seek damages, including actual, statutory, and punitive
3   damages.

4   **FOURTH CAUSE OF ACTION**
5   **BREACH OF CONTRACT**

6   85. Plaintiff hereby incorporates by reference the allegations contained in
7   this Complaint.

8   86. Plaintiff and the class members entered into contracts with Defendant.

9   87. The contracts provided that Plaintiff and the class members would pay
10  Defendant for its products.

11  88. The contracts further provided that Defendant would provide Plaintiff
12  and the class members a specific discount on the price of their purchases. This
13  specified discount was a specific and material term of the contract.

14  89. Plaintiff and the class members paid Defendant for the products they
15  purchased and satisfied all other conditions of the contracts.

16  90. Defendant breached the contracts with Plaintiff and the class members
17  by failing to comply with the material term of providing the promised discount, and
18  instead charged Plaintiff and the class members the full price of the products they
19  purchased.

20  91. As a direct and proximate result of Defendant's breach, Plaintiff and the
21  class members have been injured and have suffered actual damages in an amount to
22  be established at trial.

23  **FIFTH CAUSE OF ACTION**
24  **BREACH OF EXPRESS WARRANTY**

25  92. Plaintiff hereby incorporates by reference the allegations contained in
26  this Complaint.

27  93. Plaintiff and the class members formed contracts with Defendant at the
28  time they purchased items from Defendant's websites.  The terms of such contracts

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:17-CV-00512-JM-MDD

included the promises and affirmations of fact made by Defendant through its marketing campaign, as alleged herein, including, but not limited to, representing that the items for sale on Defendant's websites were being discounted.

94. These advertisements constitute express warranties, became part of the basis of the bargain, and are part of the contracts between Defendant and Plaintiff and the class members.

95. The affirmations of fact made by Defendant were made to induce Plaintiff and the class members to purchase items from Defendant's websites.

96. Defendant intended that Plaintiff and the class members should rely on those representations in making their purchases, and Plaintiff and the class members did so.

97. Defendant has breached its express warranties because, as alleged above, the products purchased by Plaintiff and members of the putative class were not discounted by the advertised amounts because the reference prices were inflated.

98. As a direct and proximate result of Defendant's breach, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## SIXTH CAUSE OF ACTION

## UNJUST ENRICHMENT

99. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

100. An individual is required to make restitution if he or she is unjustly enriched at the expense of another.

101. A person is enriched if the person receives a benefit at another's expense.

102. The person receiving the benefit is required to make restitution where the circumstances are such that, as between the two individuals, it is unjust for the person to retain it.

23

103. Defendant has been unjustly enriched at the expense of Plaintiff and the putative class by receiving money from purchases of merchandise that Plaintiff and the class made from Defendant that they otherwise would not have made but for Defendant's false promises of discounts.

104. Defendant received a benefit, the profits on the prices paid for merchandise, at the expense of Plaintiff and the class because Defendant sold products that it falsely promised were discounted from higher former prices, when in fact there was no higher price from which the products were discounted, and thus consumers unwittingly paid the full, former, regular, or original price and did not receive the promised bargain.

105. It is unjust for Defendant to retain the money it received from Plaintiff and the class because Defendant gained that money by deceiving Plaintiff and the class into believing they were receiving a discount on merchandise they bought when in fact they did not receive any discount from the full, former, regular, or original price because the products were never sold at a price higher than what the consumer paid or were not sold for such prices for a reasonably substantial period of time within the recent past.

106. Plaintiff and the putative class are therefore entitled to restitution of the funds they paid to Defendant for their purchases and which Defendant has unjustly retained or for such amounts as reflect the true value of the discount as advertised of the purchased products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the putative class, prays as follows:

A.      For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representative, and that Plaintiff's counsel be appointed counsel for the class;

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:17-CV-00512-JM-MDD

B.     For a declaration that Defendant's practices violate the UCL, FAL, and CLRA, and constitute breach of contract, breach of express warranty, and unjust enrichment;

C.     For an award of damages according to proof against Defendant;

D.     For an award of appropriate equitable relief, including but not limited to restitution of moneys paid to Defendant and an injunction forbidding Defendant from engaging in further unlawful conduct in violation of the UCL, FAL, and CLRA;

E.     For an order awarding reasonable attorneys' fees and the costs of suit herein, including an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and California Civil Code § 1780(e);

F.     For an award of pre- and post-judgment interest; and

G.     For such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.


DATED:     April 24, 2017                    COUNSELONE, PC


By  /s/ Anthony J. Orshansky
Anthony J. Orshansky
Alexandria R. Kachadoorian
Justin Kachadoorian

*Attorneys for Plaintiff Matt McDuffee and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 24, 2017.


By _/s/ Anthony J. Orshansky_
Anthony J. Orshansky

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:17-CV-00512-JM-MDD